Good morning, Your Honors. My name is Garbaset Mekcan. I represent Mr. Muradin. In this particular case, the interesting issue, Your Honor, is this. And it needs a little bit of historical background to put this in perspective. The immigration judge, who was a visiting judge to Los Angeles, listened to the testimony, had an opportunity to also consider certain other things that were relevant at that time as are relevant now. That being that the parents of this particular individual had been granted asylum by the service for the mere fact that this individual had been persecuted or had suffered persecution in the military. That decision copy had been provided and had been made part of the record with the immigration judge. He reviewed and listened to the testimony and found inconsistencies, yet ruled that the individual was entitled to protection or withholding under the torture convention, yet did not make his decision to be country-specific. That's why the government appealed it, appealed that portion of the decision saying that the judge erred because it was not country-specific. We appealed the judge's decision because we felt that the respondent was entitled to relief because there was sufficient evidence and there was sufficient nexus to the enumerated basis for asylum because he was a member of a particular social group and he had imputed political opinion. Now, interestingly enough, Your Honor, in this decision that came from the board at page two, at the top of the page, the court says that, and it recognizes that the respondent had suffered persecution and it says while the military duty was oppressive, there was not enough to rise to the level of persecution, so therefore it denies asylum. And then when they are looking at the argument that the government is making with regards to protection under the torture convention, it --" Ginsburg-Miller Just back up there. I thought that the board said the reason, even if you said that the ill treatment was sufficient, but that it was not related either to imputed political opinion or membership in a social group. I thought that's the reason they said. Yeah, that's correct, Your Honor. It says that it was not on account of actual or imputed. So what is the social group that you claim? The social group that I claim, Your Honor, is that military. And to that end, I have cited in my argument at page 11 a decision from this court from 1996, Chanco v. INS, in which the Ninth Circuit recognized that someone being a member of the military or former member of the military is maybe a cognizable social group. Now, that's what the social group was not an issue before the IJ, was it? Your Honor, it was not. It was not. Well, then how can it be raised now on appeal? I have raised it up on appeal before the board. So as part in front of an administrative agency, we have argued all the means and possible ways that the individual may be entitled to relief, even though at the initial stage, at the trial level, that issue was not specifically mentioned. Yeah, but there wasn't much of a record that he was, other than he was in the military, I didn't see that there was a record that he was part of some social group that was politically active. Well, Your Honor, if I may respectfully disagree, the immigration judge in his decision at the end, when he makes the finding that he is entitled to relief under the torture convention, he cites that the State Department report is replete with problems in the military. That's dealing with if he goes back and he's going to be a deserter, too, he's certainly going to be tortured. Yes, Your Honor. Isn't that your position? It is my position that, again, I insist that he is a member of a particular social group, even though no one at the trial level mentioned those particular words. But you're asking us to make a finding that he's a member of a particular social group, which you don't have much of a record on, which the BIA didn't talk about, and you're trying to make that as an issue for reversal by this Court. Well. What are we supposed to do with it, by the way? What I'm asking for, Judge, is this. The simple thing that the Board could have done was to send it back to the trial judge to correct his decision, which was to make the withholding of removal under the torture convention to be country-specific. That would have been simple. Additionally, what I'm asking from this Court is — Well, let's go back to what you had. If we got the convention — Yes, Your Honor. — against torture, and he doesn't want to go back to Armenia, he can pick out another country? Is that what you want? Well, not really, Your Honor, because I believe that the reason we appealed it, the reason that the Respondent appealed was that we concluded that the judge was wrong, that there was sufficient basis. Also, one more thing that's very important here, and there is the Child Protective Status Act. If this person had not become 21, he could have become a rider on his parents' application because the parents were granted asylum. The problem is the decision is made, then the Child Protective Status Act comes, and so forth. And in this particular case here, there's also an issue of family. But could you explain that? Because when his parents were granted — when they filed for asylum, how old was he? He was under 21, Your Honor. And did they have him as — Mentioned. — mentioned? Is he in their asylum application? Yes, Your Honor. In fact, one of his brothers has been granted asylum because he is not of age of majority. So by the time they got asylum, he had — Actually — — he was over 21? The decision comes — the parents receive asylum April the 5th, 2001, and he would have become 21 in December 20th of 2001. So in effect, it's a very interesting problem. So why wouldn't he get derivative asylum? Because, Your Honor, at that point and until about recently, where my office has these problems coming up again and again, we're having to educate government officials from the immigration all the way through the courts to having them go step by step that what is the actual rule and the application of the Child Protective Status Act. So when they gave asylum to the brother and the parents, did you file a piece of paper? I was — Did someone file a piece of paper? No, Your Honor. No. No, Your Honor. So that's not really before us, is it? No, Your Honor. I just wanted to — it's part of the record. And before you're honest, that the fact that the parents had been granted asylum — I know. I know. But the I.J. says, look, the counsel says there's some problem with the mother and the Armenian army, but there's nothing in the record on this, the I.J. says, as to the social group. So, in other words, on the finding of asylum, there was no record that would support one of the five categories, according to the I.J. Well — I mean, that's kind of — we're sort of stuck with that record, it seems to me. I respectfully disagree, because then the decision becomes inconsistent. Because even though there is no particular social group, then the judge does take one step further and gives relief on the much harsher standard, which for relief on the asylum, that standard is not as harsh or it's not as high as it would be for withholding of removal. So there may be some inconsistency here in the immigration judge's decision. I don't see why it would necessarily be inconsistent. Inconsistent because when he rules that the Respondent is entitled to relief under the Torture Convention, withholding of removal, the judge bases it on the fact that he is and will be subject to torture if he were made to return back because of his military record and part of the military. But, of course, we're not really reviewing the IJ's decision. We're reviewing the BIA's, which says, at least in its view, he doesn't meet the CAT standard. Well, interestingly enough, Your Honor, this is what it is. In the second full paragraph at page 2, the IJ, I'm sorry, the board applies the standard, which is that it has to be torture inflicted, so forth and so forth. And then it goes on to say, but the record revealed, however, that he was not subject to torture in his two years in the military and looks at past persecution, whereas the standard of review for withholding under the Torture Convention is that we're looking at the likelihood of persecution by a public official or by someone at the or acquiescence of a public official. But they say that given the history and the country conditions, the record doesn't provide evidence that he is more likely than not that torture will be inflicted upon the return by any person acting for the government. Isn't that the correct standard? I respectfully disagree with that, Your Honor, because the standard of review is in the previous earlier sentence that would be applied. Well, that's a statement, but this is their conclusion. And also, Your Honor, when we're looking on the standard of review. Well, if that's the case, if you're right, then wouldn't the remedy be to send it back to the BIA to ask them what standard is being applied, if there's some ambiguity in the standard? I agree. I agree. But in our particular position, we think that there's more evidence that not only is this individual entitled to the relief of withholding, but that he's also entitled to asylum. But there is ambiguity and there is an inconsistency in this particular decision that is made by the Board. I had respectfully requested that the review would have been made by a three-panel Board of three-panel judges. And it appears over here that one judge panel has made it, and the decision is inconsistent. That's the thing that I was arguing when we look at these two different statements. Thank you. Thank you. May it please the Court, Tom Holtzman again for the Attorney General. And in response to the earlier colloquy, this is my third oral argument on this trip. Okay. And we don't need to go into that. Okay. I defer to my colleagues. I happen to be someone who's on part-time detail to the Office of Immigration. I'm not a full-timer. When you leave, we'll give you a campaign ribbon with three stars. The question before this Court is whether the record compels reversal of the Board's findings that Muradin was not entitled to asylum withholding. Thank you, Your Honor. You should say no thank you, Your Honor. Or a Congressional Medal of Honor. Escalate. Whatever. Leaving aside the Malina Camacho issue, which is a problem here but will undoubtedly be resolved whenever this Court decides what it's going to do in the Lolan case, the question before the Court is whether the record compels reversal of the Board's findings. And our submission is that it doesn't. Both the immigration judge and the Board correctly found that there was no nexus to a protected category, which dooms both the asylum and withholding claims. Well, actually, I was wondering about it. He says a member of the military fulfills that position. I suppose that would mean if the whole Armenian army deserted and came over this country, we'd have to give them asylum? I think that's certainly the logical conclusion of his position. This Court has recognized that somebody who's in the police or military. That's not a bad idea. We give them asylum and set them to Iraq. You don't have to respond to that. I was trying to get myself back on track after that one. Well, before you get yourself back on track, there's one question about it. Sure. On the convention against torture. This is the first time I've had this question brought up, but it seems, though, if we should say that the I.J. was right on this and he showed that if he went back, he'd be tortured, that doesn't mean he stays in the United States, does it? Or doesn't it? It does. Oh, he does. If you find it's a form, I guess, technically of withholding, of removal. If you find that he's entitled to protection under the convention against torture, that means that he cannot be removed. Okay. I was thinking that it meant that he can be removed, but to some other country where it wouldn't be torture. But that's obviously I got the wrong impression. I think I'm correct. Okay. I'm not certain, but I. Okay. That's not a discretionary. Once there's a finding of a cat eligibility, then it's automatic, correct? It's not like asylum where there's a discretionary rule. I believe that's correct, Your Honor. With respect to cat, obviously it doesn't require a nexus to a protected group, which differentiates it from asylum and withholding, but there's no evidence that the government or someone acting with its acquiescence is likely, more likely than not, to torture Mr. Muradin. And, indeed, the country condition reports show the government of Armenia to be fairly active in its efforts to decrease abuse of recruits in the military, particularly on their information on that on record pages 187 and 189. If the Court has no particular questions, we would just ask that the petition for review be denied because the record doesn't compel reversal. Well, I have a question on cat particularly. Sure. There's a lot of evidence of really abuse of the military in this record, although not specific as to this individual. He went under some abuse or harsh conditions, but nobody was hitting him over the head. On the other hand, there's a strong showing that there's a lot of abuse in the military. Now he's in this country. He's obviously a deserter. Now, I don't know what the punishment of the deserter is. That's not for us to say, but suppose the punishment of a deserter would be pretty severe. Does that make any difference? Well, the record, the problem, Your Honor, is that the record doesn't disclose what the punishment of a deserter would be. But on the record, you're relying on the record that shows that he did not himself receive punishment in the record, in the military. That's correct, Your Honor. That's part of our case. Well, what did the I.J. say about to support cat? He, if I may. I've got it here, so. What he said was that the conditions that exist for common soldiers in the Armenian Army are best described as dire, and the treatment by officers in that army leaves a good deal to be desired, and that the State Department report indicates that some prisoners suffer torture, prisoners in military and civilian custody. What the country report indicates is that the government is engaged in a fairly active effort to decrease those kinds of conditions. Now, one of the things that is in the board decision that I asked you about at first that I didn't understand. In addition, the DHS correctly notes that even if a grant of protection under cat had been warranted, the immigration judge should have entered an order of removal as such protection is country-specific. What does that mean? That under cat, he cannot be removed to Armenia. I mean, he's technically subject to removal, I guess. I get it. Because he's not entitled to asylum. He's in the country illegally. He's not entitled to asylum or withholding. So it would have to be, if you have cat, you say he cannot be sent to Armenia. Right. He may be subject to removal somewhere else. It's not an area that I, it's a nuance that I'm not completely familiar with, and I apologize to the court. If he gets cat, there's no guarantee that he stays here. I think that may be correct. All right. But here we have a situation where parents have asylum, sibling has asylum, but the oldest son, he misses it for a few months, so he doesn't get anything. Your Honor, we don't know exactly why asylum was granted, but I know, for example, his father was part of some political group. I think it was parents of soldiers or something, and his father made some fairly strenuous efforts on his behalf. And that would give his father a claim that the son would not necessarily have. Of course, the son, if he's a minor, would come in under the parents, and you don't have to have an independent asylum. Right. That's correct. I guess we don't know why that didn't happen. That's correct, Your Honor. The record doesn't disclose that. But we do have a policy in this country of keeping families together, don't we? Families are sacred. Family values. There's certainly a lot of talk about the family being sacred and family values, but in this case, we also have the immigration law, which doesn't necessarily permit that. If there are no further questions, we would just ask that the Court affirm. Thanks. Thank you. Your time's up, so I think we have it all. Thank you. We go over these records very carefully. We're going to take a very short recess. All rise. The Court will stand at recess for approximately five minutes. And if it's good, Your Honor, we will recite it.
judges: Bright, Pregerson, McKeown